IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| RICHARD S.[1], | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 7:19cv00803 |
| | ) |
| ANDREW SAUL, | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff Richard S. ("Richard") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381-1383f. Richard alleges that the Administrative Law Judge ("ALJ") erred by failing to properly: (1) determine his RFC using a function by function analysis; (2) evaluate the medical opinion of a consultative examiner; (3) address his substance abuse disorder; and (4) assess his allegations regarding his symptoms.

I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 12), and **DENYING** Richard's Motion for Summary Judgment (Dkt. 10).

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

**STANDARD OF REVIEW**

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Richard failed to demonstrate that he was disabled under the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

**CLAIM HISTORY**

Richard filed for DIB and SSI in August 2015, claiming his disability began on December 31, 2006, due to attention deficit hyperactivity disorder ("ADHD"), attention deficit

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

2

disorder ("ADD"), right eye blindness, no use of left hand, left arm and leg numbness, ankle and feet deformities, low back pain, migraines, depression, anxiety, and a dislike of being around others. R. 242, 244, 291. Richard's date last insured was June 30, 2008; thus he must show that his disability began on or before this date and existed for twelve continuous months to receive DIB. R. 297; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Richard's applications at the initial and reconsideration levels of administrative review. R. 62–72, 73–79, 82–94. On August 15, 2018, ALJ Thomas Erwin held a hearing to consider Richard's claims for DIB and SSI. R. 34–61. Counsel represented Richard at the hearing, which included testimony from vocational expert Asheley Wells. On November 20, 2018, the ALJ entered his decision analyzing Richard's claims under the familiar five-step process[3] and denying his claim for benefits. [4] R. 15–29.

The ALJ found that Richard was insured at the time of the alleged disability onset and that he suffered from the severe impairments of right eye vision loss, history of hallux valgus surgery, and right leg deep vein thrombosis ("DVT").[5] R. 18. The ALJ also determined that while Richard's substance abuse was an ongoing medical determinable impairment, it was not a

---

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[4] Richard was 24 years old on his alleged onset date, 25 years old on his date last insured, and 36 years old on the date of the hearing, making him a younger person under the Act. R. 44, 82.

[5] The ALJ indicated that the DVT dated from January 2018. R. 18.

3

severe impairment.[6] Id. Considering the four broad areas of mental functioning, the ALJ found Richard had mild limitations in understanding, remembering, or applying information, interacting with others, and concentrating, persisting, or maintaining pace, and no limitation in adapting or managing himself. R. 19–20. The ALJ determined that these impairments, either individually or in combination did not meet or medically equal a listed impairment. R. 21. The ALJ specifically considered listing 1.02 (major joint dysfunction), listing 2.02 (loss of central visual acuity), and listing 4.11 (chronic venous insufficiency). R. 21–22.

The ALJ concluded that Richard retained the residual functional capacity ("RFC") to perform a limited range of light work. R. 22. Specifically, Richard cannot operate foot controls with the right leg, be exposed to hazards or unprotected heights, or perform work requiring depth perception. Id. Richard can only occasionally climb, and the work must allow for at least two hours of sitting. Richard is able to read and understand basic words and instructions. Id. The ALJ determined that Richard has no past relevant work, but could perform jobs that exist in significant numbers in the national economy, such as cashier, assembler, and ticket taker.[7] R. 28. Thus, the ALJ determined that Richard was not disabled. R. 29. Richard appealed the ALJ's decision and the Appeals Council denied his request for review on October 22, 2019. R. 1–4.

## ANALYSIS

Richard alleges that the ALJ failed to properly determine his RFC using a function by function analysis, evaluate the medical opinion of Sung-Joon Cho, M.D., address his substance abuse disorder, and assess his allegations regarding his symptoms.

---

[6] The ALJ also found that Richard's ADHD and anxiety were non-severe impairments, while his alleged rheumatoid arthritis, back pain, knee pain, and headaches were not medically determinable impairments. R. 18, 21.

[7] As the ALJ noted, the vocational expert testified she reduced the number of available cashier positions by half to accommodate Richard's RFC requiring at least two hours of sitting. R. 28.

4

**A. Medical History Overview**

1. <u>Medical Treatment</u>

Richard attempted to seek treatment once during the period applicable to his DIB claim, December 2006 through June 2008.[8] In January 2008, he requested a psychological evaluation at the emergency room due to hearing voices telling him he is "not any good;" however, he left before he could be treated. R. 628–29. The time period after Richard's date last insured until his SSI application, from June 2008 to August 2015, does not apply to either his DIB or SSI claim. However, in any event, he sought treatment only twice during these years, for drug abuse and dental pain, both in 2014. R. 636. For the time period applicable to Richard's SSI claim, August 2015 through December 2018, Richard sought treatment on several occasions at the emergency room, including for a stabbing in February 2016, drug overdoses in March and May 2016, being hit in the head by a rock while mowing the lawn in August 2016, right leg swelling in January 2018, which resulted in a DVT diagnosis in his right leg, and left leg knee pain and swelling in July 2018.[9]  R. 339–44, 381, 385, 408, 525, 662. Richard had continued complaints of right leg pain, which improved with medication, though he reported difficulty affording the medication.[10] R. 553, 555, 657.

---

[8] Richard filed his claims for disability benefits almost ten years after his alleged disability onset date, and different time periods relate to the two claims. The period applicable to his DIB claim is December 2006 through June 2008, his alleged onset date through his date last insured. The period applicable to his SSI claim is August 2015, through December 2018, his protective filing date through the date of the ALJ's decision. The Commissioner points out that the time period from June 2008 to August 2015, from after Richard's date last insured until his SSI application, is largely irrelevant. D.'s Br. at 7, Dkt. 13.

[9] After being hit by the rock, Richard complained of headache and sudden vision loss in his left eye; on discharge, his vision had improved and he was advised to follow up with an ophthalmologist. R. 420. . However, his CT scan of his brain was normal. Richard did see an ophthalmologist in August 2017 to obtain glasses. R. 401. He reported frequent headaches as well as blindness in his right eye, but 20/20 vision in his left eye, with correction. R. 401, 23.

[10] In non-emergency room treatment, Richard complained of foot pain and discoloration in March 2016, and abscess and left knee pain in August 2018. R. 384–85. R. 656–58.

2. Medical Opinions

In relation to a prior disability application, in July 2011, Roger DeLapp, Ph.D. performed a consultative psychological examination.[11] R. 650–54. Dr. DeLapp diagnosed Richard with adult ADHD, anxiety, possibly secondary to the untreated ADHD, alcohol abuse, blindness, and severe inoperable bunions. R. 654. Dr. DeLapp indicated Richard did not have a psychiatric condition that would interrupt his ability to work, he was capable of entry level work, simple and repetitive tasks, and that his ability to work on a consistent basis and get along with supervisors, coworkers and the public would improve with treatment for his adult ADHD. R. 654. The ALJ gave Dr. DeLapp's opinion some weight. R. 26.

Also in relation to his previous disability application, in July 2011, Sung-Joon Cho, M.D. performed a physical consultative examination. R. 645–48. Dr. Cho diagnosed chronic foot pain with a history of bunion surgery, but unremarkable gait, right eye blindness, and ADHD with "likely some mild mental retardation." R. 647. Dr. Cho noted Richard could see only light with his right eye, but has 20/50 vision in his left eye. R. 646. Dr. Cho indicated he could stand and walk up to four hours a day, with no limitations in sitting, lifting/carrying, or postural/manipulative activities, but he might have difficulty focusing because of his ADHD, and "it would not be reasonable to expect activities that require fine visual acuity and depth perception." The ALJ gave this opinion some weight. R. 26.

State agency physicians Richard Surrusco, M.D. and Luc Vinh, M.D. reviewed the record in June and November 2016, respectively, with Dr. Surrusco finding Richard capable of a limited range of light work regarding his SSI claim, but insufficient information to determine his DIB claim, and Dr. Vinh finding there was insufficient information to make a determination regarding

---

[11] The ALJ discusses Dr. DeLapp's report even though it was performed after the DIB period expired, but prior to when Richard filed for SSI benefits.

6

either claim. R. 69–71, 77, 85–86, 91. State agency psychologists Julie Jennings, Ph.D. and Patricia Bruner, Ph.D., also reviewed the record during the same timeframes. Dr. Jennings concluded Richard did not have a medically determinable mental impairment and Dr. Bruner found there was insufficient evidence to make a determination. R. 66, 92. The ALJ gave the opinions of the state agency physicians and psychologists some weight. R. 26.

### B. RFC and Function-by-Function Analysis

Richard argues that the ALJ's RFC findings are not supported by substantial evidence, specifically regarding whether his impairments, including DVT and left knee synovitis, would "cause him to experience episodes of pain necessitating breaks and how often those breaks would occur."[12] Pl.'s Br. at 15, Dkt. 11. In support, Richard notes he had difficulty bearing weight on his right leg when seen in the emergency room in June 2018, had decreased range of motion in the left knee on examination in July 2018, and a slow gait on examination in August 2018. Richard further argues that the ALJ did not explain how his RFC accommodates his right eye vision loss.

A function-by-function analysis requires the ALJ to develop an adequate RFC which accounts for the work activities the claimant can perform given the physical or mental impairments affecting his ability to work. Importantly, the ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination. See SSR 96-

---

[12] Richard also complains that the ALJ's RFC limiting him to work that "must allow for at least two hours of sitting" is not sufficiently specific. Pl.'s Br. at 14, Dkt. 11. However, Richard provides no support for this argument, and I find that the ALJ's RFC is sufficiently clear, in that Richard's maximum capacity for sitting, standing, and walking are those defined by light work, except he must be permitted to sit for at least two hours. R. 22. As set out in relevant part in 20 C.F.R. § 404.1567(b), "light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." Further, the ALJ specifically clarified at the hearing that the vocational expert should "follow the traditional definition of light work . . . meaning six hours of standing, two hours of sitting." R. 57.

7

8p[13]; see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that an ALJ needs to provide an explicit explanation linking medical evidence listed in the decision to his ultimate findings). The ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8p, 1996 WL 374184, at *7.

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate ... where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d at 636 (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weight lifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D.W. Va. Apr. 29, 2015).

Here, the ALJ's decision includes the narrative discussion required by SSR 96-8p, and contains sufficient information to allow meaningful review. Unlike the ALJ in Mascio, the ALJ

---

[13] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

in this case did not fail to consider conflicting medical evidence. Further, the court is "not left to guess about how the ALJ arrived at his conclusions" because the ALJ's findings include a comprehensive analysis of Richard's medical records and the medical opinions, even those outside the period relevant to his SSI and DIB claim, Richard's hearing testimony, and the ALJ's conclusions. The ALJ's opinion specifies how the limitations in the RFC correlate with his severe impairments. At bottom, Richard's argument amounts to a disagreement with the ALJ's RFC determination and essentially asks the court to reweigh the evidence.

Contrary to Richard's claim that the ALJ failed to account for his need for additional breaks, due to pain, the ALJ specifically found that the RFC limitations adequately accounted for his DVT, and discussed the records cited by Richard. The ALJ noted "the recent development of right leg DVT in January 2018" and found that:

> [W]hile the DVT condition is chronic, it is not acute and would not preclude all work. He has also been limited to work involving no foot control operations, no exposure to hazards or unprotected heights, and only occasional climbing to accommodate for his DVT.

R. 25. Further, the ALJ did not ignore the medical records cited by Richard, including from June, July, and August 2018, but instead specifically discussed each record. R. 24. In explaining the RFC related to Richard's vision, the ALJ wrote:

> As for his right eye vision loss . . . he is able to read and understand basic words and instructions, but cannot perform work requiring depth perception or work around hazards or unprotected heights. [Richard] testified his vision in his left eye was normal with correction.

R. 25. Indeed, in August 2016, Richard reported to a medical provider that he "normally sees perfectly fine," in August 2017, Richard's eye doctor indicated he had 20/20 vision in his left eye

9

with correction, and Richard testified at the hearing that he sees "good" with his left eye when wearing glasses.[14] R. 23, 50, 408.

### C. Opinion of Consultative Examiner

Richard contends the ALJ failed to address why he did not adopt the consultative examiner, Dr. Cho's, opinion regarding "[Richard's] inability to engage in activities that require visual acuity and include limitations stemming from that inability in his RFC findings." Pl.'s Br. at 16, Dkt. 11. Richard argues that the jobs cited by the vocational expert all require near acuity on either a frequent or occasional basis, and, could not be performed if the ALJ had adopted Dr. Cho's opinion.

The regulations require an ALJ to evaluate a one-time evaluator, such as consultative evaluator Dr. Cho, using the factors outlined in the regulations, and to expressly indicate and explain the weight he or she accords to such opinions. See 20 C.F.R. §§ 404.1527(c), 416.927(c).[15] Here, the ALJ appropriately considered the factors and the record in determining the weight to give the Dr. Cho's opinion, and adequately explained why he did not adopt Dr. Cho's opinion in its entirety. The ALJ specifically acknowledged Dr. Cho's finding that "it would not be reasonable to expect activities that require fine visual acuity and depth perception." R. 26. However, the ALJ gave Dr. Cho's opinion only some weight, noting that, while it is "largely consistent with the contemporaneous examination findings . . . there is not much support

---

[14] Of course, Richard points out he also testified at the hearing that he "cannot see ordinary objects on the floor, trips over things, and runs into doors." Pl.'s Br. at 16, Dkt. 11. Richard likewise stated at the hearing that he doesn't drive because he "can barely see" even with his glasses. R. 56. In any event, the ALJ was clearly aware of and considered Richard's vision loss and did limit his RFC to no work requiring depth perception. R. 22.

[15] Different rules apply to the opinion of a treating physician for claims filed prior to March 27, 2017, such that an ALJ must give the opinion of a treating source, controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).

10

for his limitation on standing or walking . . . . Id. Elsewhere in the opinion, the ALJ discussed Richard's vision, including right eye blindness, and 20/20 vision in his left eye with correction in 2017. R. 23. Indeed, the RFC provides that Richard "cannot perform work requiring depth perception." R. 22. At the hearing, the ALJ indicated that "because [Richard's] essentially got one eye vision, [] we need to eliminate jobs that would require good bilateral vision or depth perception." R. 58. Thus, the ALJ clearly considered Dr. Cho's opinion, provided it a specific weight, and included some of the proposed limitations in Richard's RFC. Contrary to Richard's arguments, under these circumstances, the ALJ was not required to provide further explanation, including discussing or assigning individual weight to specific portions of Dr. Cho's opinion.

**D. Substance Abuse Disorder**

Richard argues that the ALJ erred by finding his substance abuse disorder nonsevere, characterizing it as "clearly an attempt to circumvent" the required bifurcated analysis. In support, Richard points to a handful of medical records, including the opinions of the state agency doctors and consultative examiner Roger DeLapp, Ph.D., admissions of drug use by Richard to medical providers, emergency room visits related to drug overdoses, and other evidence of illegal drug use, including an abscess in 2018 related to IV drug abuse. However, these records were considered by the ALJ, who weighed the medical opinions and explained his conclusion that Richard's substance abuse, while a medically determinable impairment, was not severe.[16] In fact, the ALJ considered Richard's alcohol abuse throughout the opinion, despite

---

[16] I reject Richard's argument that the ALJ's acknowledgment that Richard's "chronic drug use complicates the symptom valuation process" (R. 25) operates as an admission that Richard's substance abuse is a severe impairment. Pl.'s Br. at 21, Dkt. 11. Instead, it merely shows the ALJ did not improperly ignore Richard's drug abuse. In fact, the ALJ wrote:

> After a careful review of the record, [I] find that although substance abuse was clearly present and ongoing, there was no evidence of an impact on other impairments. Therefore, this is not a severe impairment within the meaning of the statute.

finding it non-severe.[17] See Huntley v. Saul, No. 1:18CV389, 2019 WL 3779671, at *3 (M.D.N.C. Aug. 12, 2019), report and recommendation adopted, No. 1:18CV389, 2019 WL 5783536 (M.D.N.C. Sept. 4, 2019) ("As long as the ALJ determines that the claimant has at least one severe impairment and proceeds to discuss all of the medical evidence, any error regarding failure to list a specific impairment as severe at step two is harmless.") quoting McClain v. Colvin, No. 1:12CV1374, 2014 WL 2167832, at *4 (M.D.N.C. May 23, 2014); Blevins v. Colvin, No. 5:15-cv-14240, 2016 WL 6987169, at *9 (S.D. W. Va. Sept. 16, 2016) (collecting cases).

The two-step process described in 20 C.F.R. § 404.1535 and SSR 13-2p requires the ALJ to "*first* make a determination as to disability by following the five-step sequential evaluation process, 'without segregating out any effects that might be due to substance use disorders.' " As-Salaam v. Colvin, No. 1:15CV630, 2016 WL 6078336, at *4 (M.D.N.C. Oct. 17, 2016) (quotation omitted). Then, if the ALJ finds the claimant disabled "based on symptomology alone," he must follow the five-step sequential analysis a second time, and determine whether the claimant would still be disabled if he stopped his substance abuse. Id. Here, the ALJ identified

---

R. 18.

[17] To the extent that Richard argues that ALJ also erred in determining that his ADHD and anxiety were non-severe, I reject this argument for the same reasons. Additionally, the ALJ's determination was supported by substantial evidence. The ALJ considered the medical record and determined that his ADHD and anxiety "do not cause more than minimal limitations in [his] ability to perform basic mental work activities and are therefore non-severe." R. 18, 20. In support, the ALJ noted the normal mental status examinations in the record, and that Richard sought no treatment from mental health professionals since his alleged onset date. R. 18. The ALJ specifically wrote:

> [A]side from treatment for accidental heroin overdoses, he did not seek emergency room treatment for mental health impairment and did not require any inpatient hospitalization. [Richard] never sought the care of a therapist, counselor, psychiatrist, or psychologists. He once went to the emergency room reporting auditory hallucinations, but he left without a diagnosis or treatment, and it appears this symptom was likely due to his illegal substance abuse.

R. 18.

12

substance abuse as a medically determinable impairment, reviewed the entire record, performed the five-step analysis, specifically including the impact of Richard's drug abuse in this analysis, and found Richard not disabled.[18] Because the ALJ found Richard not disabled at the first step, he properly did not proceed to the second step. See e.g. Hundley v. Colvin, No. CV 9:14-4115-BHH-BM, 2016 WL 423548, at *5 (D.S.C. Jan. 12, 2016), report and recommendation adopted, No. CV 9:14-4115-BHH, 2016 WL 404075 (D.S.C. Feb. 3, 2016) (noting that the "finding of disability is a *condition precedent* to the application of the law requiring a determination of whether alcohol or drug addiction is a contributing factor material to the determination of disability") (quotation omitted). Accordingly, I find that the ALJ properly evaluated Richard's substance abuse.

### E. Subjective Allegations

Richard argues that the ALJ's assessment of his allegations is not supported by substantial evidence. In support, Richard primarily references his previous arguments, specifically that the ALJ failed to properly assess Richard's physical and mental impairments, substance use disorder, and Dr. Cho's opinion. As I have already addressed these arguments, I will not address them again now. Here, the ALJ's opinion included a detailed discussion of Richard's medical history, impairments, substance abuse, and doctor's opinions, along with his allegations, and the ALJ adequately supported his finding that Richard's allegations were not entirely consistent with the medical evidence and other evidence in the record.

At bottom, I find the record provides substantial support for the ALJ's decision, and the ALJ complied with the Regulations in assessing Richard's allegations. See Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims, SSR 16-3P, 2017 WL 5180304

---

[18] For example, the ALJ noted Richards' hospital treatment related to drug abuse in 2014, 2016, and 2018, as well as his testimony at the hearing regarding is history of drug abuse. R. 22–24

13

(S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). It is for the ALJ to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996); see also Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). The ALJ's opinion was thorough and applied the proper legal standard, and I will not re-weigh the evidence. Accordingly, I conclude that the ALJ supported his analysis of Richard's subjective complaints with substantial evidence, and that Richard is capable of performing work at the level stated in the ALJ's opinion.

## CONCLUSION

It is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The clerk is directed to transmit the record in this case to Glen E. Conrad, Senior United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection, including the waiver of the right to appeal.

Entered: February 24, 2021

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge